UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

INOVA ENERGY, LLC,                    :

               Plaintiff         :    CIVIL ACTION NO. 3:25-817

v.                                    :    (JUDGE MANNION)

PIKE COUNTY LIGHT & POWER             :
COMPANY and CORNING
ENERGY CORPORATION *formerly*         :
*known as* CORNING NATURAL
GAS HOLDING CORPORATION,              :

               Defendants        :

## MEMORANDUM

Presently before the court is the motion to dismiss, **(Doc. 16)**, filed by Defendants Pike County Light & Power Company and Corning Energy Corporation. Defendants' motion sets forth three arguments as to why the court should dismiss Plaintiff Inova Energy, LLC's antitrust lawsuit. First, Defendants contend that the Pennsylvania Public Utility Commission should resolve Plaintiff's claims under the primary jurisdiction doctrine. (Doc. 16, ¶ 5(a)). Second, Defendants argue that they are immune from antitrust liability under the state action immunity doctrine. (*Id.*, ¶ 5(b)). Finally, absent valid federal antitrust claims in light of the two aforementioned legal theories, Defendants argue that the court lacks

1

supplemental jurisdiction to consider any remaining state claims. (*Id.*, ¶ 5(c)).

I. **Factual and Procedural Background**

This case involves a private antitrust action initiated by Inova Energy, LLC (hereinafter referred to as "Inova" or "Plaintiff"), a Pennsylvania foreign LLC engaged in the business of selling electricity to retail customers within the commonwealth of Pennsylvania as an Electric Generation Supplier ("EGS"). (Doc. 7, ¶ 2). The first named Defendant in this matter, Pike County Light & Power Company, is a Pennsylvania Electric Distribution Company ("EDC") and a wholly owned subsidiary of the second named Defendant, Corning Energy Corporation, a New York corporation formerly known as Corning Natural Gas Holding Company (herein collectively referred to as "Defendants" or "Pike"). (Doc. 7, ¶¶ 2-3).

Inova's original complaint was filed on November 8, 2024, in the Eastern District of Pennsylvania and was amended on March 31, 2025. Subsequently, Judge John R. Padova of the Eastern District issued an order transferring the case to this court on the grounds of improper venue.

The amended complaint, filed with this court on March 31, 2025, alleges that Pike engaged in "illegal anticompetitive conduct to insulate, extend, and protect its monopoly over the electric distribution service

territory". (Doc. 7, ¶ 1). More particularly, Inova alleges that Pike failed to provide them with customer data necessary to offer competitive electric generation services to its customers, despite being required to exchange this data under the Electricity Generation Customer Choice and Competition Act ("Competition Act") and the Pennsylvania Public Utility Commission's ("PUC" or "Commission") regulations. (Doc. 7).

For context, the Competition Act, passed by the Pennsylvania General Assembly in 1996, restructured Pennsylvania's electricity market by providing retail customers with "direct access to a competitive market for the generation and sale or purchase of electricity." 66 Pa.C.S. §2802(13). To accomplish this market transition, the Competition Act delegated "full power and authority" to the Commission "to enforce, execute and carry out … its regulations," in order to "prevent anticompetitive … conduct." 66 Pa.C.S.A. §§501, 2811. Accordingly, the Commission's role was to promulgate regulations at a micro level to effectively implement the broad requirements outlined in the Competition Act.

Under 66 Pa.C.S.A. §2807, the Competition Act established broad requirements for EDCs such as Pike to follow, including the obligation to provide adequate and accurate customer information to ESGs such as Inova. To ensure compliance with these requirements, EDCs were required

to file various plans, reports, and contracts for the Commission's approval, including tariffs and default service plans. Through these filings, the Commission required EDCs to show that they incorporated Electronic Data Interchange ("EDI") protocols, which was the default standard for transferring and exchanging customer data with ESGs. *In re Standards for Electronic Data Transfer and Exchange*, Docket No. M-00960890, F.0015, 1998 WL 553021. However, the Commission allowed EDCs to petition for waivers to certain regulations, including the EDI requirements, provided they demonstrate that such an exception is justified. *See* 52 Pa. Code §5.41.

With this regulatory framework in mind, the Commission issued various orders approving Pike's default service plans and EDI waiver petition after demonstrating that the cost of implementing an EDI system was high relative to Pike's size as a company. (Doc 7, ¶¶ 33-48). As a result, Pike argues that they do not have the customer information that Inova requests, nor are they required to provide such information in light of the Commission's orders granting their waiver petition. (Doc 23, at 7).

Inova argues that, despite Pike being granted a waiver from implementing the EDI standards, they are still required to provide the requested customer data through a website-based File Transfer Protocol

4

("FTP") platform, which was the alternative data exchange method that the companies agreed Pike would use for customer data exchange. (Doc. 24 at 3). Stated differently, Inova claims that the Commission's order granting Pike's petition for a waiver "merely authorizes the use of an alternative delivery method; it does not relieve Pike of its duty to furnish the information itself." (Doc. 24 at 3).

According to Inova's amended complaint, the failure to provide this necessary customer data in accordance with the Competition Act and the Commission's regulations is a violation of both federal and state laws. Specifically, at the federal level, Inova maintains that Pike's actions implicate Sections 1 through 4 of the Sherman Antitrust Act (15 U.S.C. §§1–4), as well as Sections 4 and 16 of the Clayton Antitrust Act (15 U.S.C. §§15, 26). At the state level, Pike's actions allegedly violate Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) (73 P.S. §201), and also constitute tortious interference under Pennsylvania law.

Pike's instant motion to dismiss was filed on May 15, 2025. Inova filed a brief in opposition, (Doc. 24), on June 18, 2025, to which Pike responded with a subsequent reply brief (Doc. 27). Having reviewed all relevant pleadings, the court finds the motion now ripe for disposition.

## II. **Discussion**

Pike's motion to dismiss sets forth three arguments for the court to consider. Primarily, Pike argues that Inova's claims fall within the special expertise of the Commission and should therefore be dismissed under the primary jurisdiction doctrine (Doc. 16, ¶ 5(a)). Alternatively, Pike argues that they are immune from antitrust liability under the state action immunity doctrine, given that the Commission has authorized and actively supervises Pike's activities within the restricted electricity market. (*Id.*, ¶ 5(b)). Finally, if the court agrees that Pike is immune from antitrust claims, Pike argues that the court lacks supplemental jurisdiction to consider any remaining state claims. (*Id.*, ¶ 5(c)).

For purposes of Pike's motion to dismiss this court has taken as true Inova's allegations that Pike was required to provide the requested customer data under the Competition Act and the Commission's regulations yet failed to do so. On the basis of such allegations the court agrees that deference should be given to the Commission to resolve the merits of Inova's claims on primary jurisdiction grounds. Accordingly, the

court will not address the remaining arguments, except for the issue of primary jurisdiction.[1]

The doctrine of primary jurisdiction is a longstanding legal principle aimed at "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 63 (1956). As explained by the Supreme Court, the primary jurisdiction doctrine:

> applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*Id.* at 64.

While "[n]o fixed formula exists for applying the doctrine," *id.*, the Third Circuit has recognized the following four-factor test for determining whether a district court should abstain from hearing an otherwise valid claim on primary jurisdiction grounds:

---

[1] The Court's resolution of Pike's claims concerning state-action immunity and the absence of supplemental jurisdiction depends on the Commission's determination.

> 1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; 2) Whether the question at issue is particularly within the agency's discretion; 3) Whether there exists a substantial danger of inconsistent rulings; and 4) Whether a prior application to the agency has been made.

*Baykeeper v. NL Industries, Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (citing *Global Naps, Inc. v. Bell Atl.–N.J.*, 287 F.Supp.2d 532, 549 (D.N.J.2003)). As the court will analyze below, all four of these factors weigh in favor of the primary jurisdiction doctrine.

### i. The Need for the Commission's Expertise

In order to analyze Inova's claims under the first factor, the "question at issue" must be identified and described with particularity. Broadly speaking, the underlying dispute in this case revolves around Pike's obligations as an electric distributor to provide customer data to its supplier, Inova. These obligations are regulated through the Commission, and are enforced on an individual basis through regulatory orders and through the company's filings, which require the Commission's approval. Therefore, the question at issue is whether these regulations required Pike to provide the requested customer data, and the extent to which the Commission's orders

granting Pike's waiver limited these requirements. This question falls directly within the Commission's field of expertise.

As briefly mentioned, the Commission operates with authority granted to it by the Pennsylvania General Assembly and is responsible for promoting competition within Pennsylvania's electric utility industry in accordance with the Competition Act. In furtherance of this objective, the Commission requires electric utility companies to incorporate interaction and coordination protocols that enable the transfer of electronic data and customer information from distributors to suppliers. These requirements, which included EDI implementation, were set forth in Pike's Electric Generation Supplier Coordination Tariff. (Doc. 7, ¶ 24-25). However, since the adoption of the EDI standards, the Commission has issued a series of regulatory orders granting Pike's petitions for EDI waivers while approving Pike's default service plans reflecting these waivers. (Doc. 7, ¶ 33-48). The crux of this dispute lies in the impact of these regulatory orders.

Although the parties appear to agree on the procedural history between Pike and the Commission, they each reference the Commission's orders as evidence to support their claims. On one hand, Pike argues that they have no obligation to provide the information requested by Inova, stating, "nor is [Pike] compelled to provide information beyond what the

9

Commission had required in its various orders." (Doc. 23, at 7). However, Inova contends that Pike "incorrectly interprets [the orders] as a waiver from the obligation to provide the underlying customer data." Inova further cites to Pike's latest waiver petition and claims that Pike had agreed to provide the customer data through the alternative FTP protocol. (Doc. 24, at 3). Consequently, Inova's claims directly implicate Pike's filings and the subsequent orders issued by the Commission granting Pike's waiver petition.

Faced with a similar issue in *MCI*, the Third Circuit described the scope of the Commission's expertise in the context of the primary jurisdiction doctrine, stating:

> The Pennsylvania Public Utility Law requires public utilities to file tariffs with the PUC. *See* 66 Pa.C.S. § 1302 (Purdon 1979 & Supp. 1995). These tariffs are binding and dispositive of the rights and liabilities between the customer and the public utility. *See* 66 Pa.C.S. § 1303 (Purdon 1979). The PUC has enforcement power over its tariffs and regulations, and matters that pertain to those tariffs are considered to be within the particular expertise of the PUC. *See* 66 Pa.C.S. § 501, *et seq.* (Purdon 1979).

*MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1103 (3d Cir. 1995). More directly, the court held that "issues that implicate a

utility's tariff are deemed to be within the special expertise of the PUC". *Id.* at 1104.

While Inova's claims extend beyond a tariff dispute, the court finds no meaningful distinction in this case. The core issue revolves around Pike's adherence to their filings and a series of regulatory orders issued by the Commission. Therefore, resolving this dispute entails questions of compliance that fall directly under the Commission's enforcement power. Accordingly, the Commission is best positioned to resolve Inova's claims.

### ii. The Commission's Discretion over Inova's Claims

The second factor weighs in favor of primary jurisdiction for similar reasons. As public utilities, Pike and Inova operate under the supervision of the Commission and are required to comply with its orders and regulations. These orders and regulations are designed to promote greater competition in the electricity generation market, to the extent that it serves the public interest. *See* 66 Pa.C.S.A. §2802. Importantly, the Commission recognizes that, on a case-by-case basis, serving the public interest may necessitate waiving these competition-enhancing regulations. *See* 52 Pa. Code §5.43(a). The approval of such exceptions is therefore contingent upon a public interest inquiry, a process in which the Commission retains complete discretion. *See* 66 Pa.C.S.A. §501; *see also City of Pittsburgh v.*

*West Penn Power Co.*, 993 F. Supp. 2d 332, 338 n.13 (W.D. Pa. 1998) (citations omitted) (holding that "[t]he extent to which competition may be allowed between utilities is a matter within the exclusive discretion of the PUC.").

In this case, Pike sought an exception by filing a petition for a waiver from the EDI standards and submitted supporting facts to justify their grounds for the request. The Commission considered Pike's concerns and, at its discretion, determined that granting Pike this waiver was in the public interest. (Doc. 7, ¶¶ 45, 46). In this same vein, determining whether Pike's failure to provide the customer data exceeded the scope of the waiver may ultimately necessitate a similar public interest inquiry, a process that is solely within the Commission's discretion.

### iii. Substantial Danger of Inconsistent Rulings

Given the nature of the inquiry that is required to resolve Inova's claims—particularly the interpretation of various orders from the Commission and the scope of Pike's waiver regarding data exchange—there is a significant risk that the court's decision would conflict with that of the Commission. Whether the Commission "expressly authorized Pike to proceed in the manner about which Inova complains," (Doc. 23, at 18), as Pike contends, or whether Pike's refusal to comply with Inova's request

was done in defiance of the Commission, its regulations, and various orders, is a question that only the Commission can answer with certainty.

Inova argues that the Commission's inability to award damages eliminates the risk of inconsistent rulings. (Doc. 24 at 7). However, the Pennsylvania Supreme Court has rejected the argument that agencies lose primary jurisdiction over claims solely because they seek monetary relief, describing it as a "simplistic notion" that "ignores the reality that frequently both the courts and administrative agencies must each play roles in the adjudication of certain matters." *Elkin v. Bell Tel. Co. of Pa.*, 491 Pa. 123, 420 A.2d 371, 375 (1980).

To accommodate an agency's inability to award damages, *Elkin* recognized a "bifurcated procedure," whereby issues concerning liability are referred to an administrative agency while the civil suit is stayed to allow the issue of damages to proceed pending the agency's determination. *Id.* at 376. This mechanism was bolstered by the Third Circuit in *MCI*, 71 F.3d at 1106, which utilized the bifurcated procedure from *Elkin* by instructing the district court to transfer a third-party claim to the PUC for a determination of liability while retaining jurisdiction over damages pending the PUC's decision. In fact, despite Inova's argument that a request for damages prevents the court from deferring to the Commission, Inova

immediately presents an alternative argument requesting that the court bifurcate their claims. *See* (Doc. 24, at 7) (stating that "should the Court find primary jurisdiction is deemed to rest with the PUC, it is respectfully submitted the judicial proceedings be suspended while the technical issue is referred to the PUC for its views").

Accordingly, given the prior findings that Inova's claims fall within the Commission's expertise, the court will not circumvent the Commission's discretion to adjudicate liability. Doing so would pose a significant risk of inconsistent rulings.

### iv.  Prior Relief Sought from the Commission

Finally, the Commission provides several procedures to address Inova's claims. These include formal and informal complaint procedures under 52 Pa. Code §§5.21 and 56.163, a dispute resolution process outlined in 52 Pa. Code §54.122(4)(i)-(iv), and various petition procedures for clarifying and resolving controversies, including 52 Pa. Code §§5.42 and 5.572. Despite these options, Inova failed to raise their claims to the Commission entirely.

Although Inova correctly notes that none of these procedures offered through the Commission can provide monetary relief, the court will maintain jurisdiction over Inova's claims. By doing so, Inova will have the opportunity

to proceed on the issue of damages through this court upon a favorable ruling from the Commission.

### III. Conclusion

Accordingly, upon review of Pike's motion to dismiss **(Doc. 16)**, Inova's claims will be stayed and transferred to the Commission for a ruling on liability. The court will retain jurisdiction over this case pending the Commission's determination of liability. An appropriate order follows.

*(signature)*

**MALACHY E. MANNION**
**United States District Judge**

**DATED:** 12/22/25
25-0817-01